IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. TDC-20-260 |
| | * | |
| JASMINE WORTHY, | * | |
| | * | |
| Defendant | * | |
| | * | |
| | ******* | |

**GOVERNMENT'S SENTENCING MEMORANDUM**
**AND REQUEST FOR RESTITUTION**

The United States of America, through undersigned counsel, respectfully submits this memorandum in aid of sentencing for defendant Jasmine Worthy.  For the reasons stated below, a custodial sentence of six months, followed by three years of supervised release, is appropriate in this case to fulfill the goals of sentencing.  In addition, restitution in the amount of $36,603.30 should be ordered, as stipulated to by the defendant.

**Statement of the Offense**

The Army and Air Force Exchange Service ("AAFES") operates retail stores that serve the military community.  Earnings from sales support morale, welfare, and recreation programs for the military, among other services, such as providing free lunch for K-12 students on military bases overseas.  *United States v. Passut*, 73 M.J. 27, 30 (C.A.A.F. 2014); School Meal Program, AAFES.com, https://www.aafes.com/about-exchange/school-lunch-program (last visited May 5, 2022).

Between May 23, 2019 and July 2, 2019, the defendant stole or took merchandise she knew to be stolen from AAFES back to the store to return for store credit, which she then used to buy prepaid debit cards that could be used anywhere.  ECF No. 106-1 ("Stipulation of Facts") at

1

1-2.  She did so at least 29 times, causing a loss to the stores of at least $36,603.30.  *Id*. at 2-3.  The defendant has pled guilty to Count One of the indictment, conspiracy to commit theft of government property, in violation of 18 U.S.C. § 371.  ECF No. 106 ("Plea Agreement").  The defendant has also stipulated to restitution in the amount of $36,603.30.  *See id*. ¶ 10.

## Sentencing Guidelines Range

As outlined in the plea agreement and Presentence Investigation Report ("PSR"), the defendant's final offense level is 8.  *Id*. ¶ 6c; PSR ¶ 29.[1]  The defendant's criminal history category is a I, leading to an advisory Sentencing Guidelines range of 0-6 months.  *Id*. at 21.  The range for supervised release is 1-3 years.  *Id*.  Both of these ranges are below the statutory maximums, which are 5 years' imprisonment  and 3 years' supervised release.  *See* 18 U.S.C. §§ 371; 3583(b)(2).

## Legal Framework

In imposing a sentence, the Court "must weigh the seven factors listed in [18 U.S.C.] § 3553(a): '(1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing . . . ; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution.'"  *United States v. Fowler,* 948 F.3d 663, 668 (4th Cir. 2020).

The Court has discretion to determine the relative importance of the sentencing factors.  "While the consideration of one § 3553(a) factor to the exclusion of the others is not appropriate, it is not required that the district court somehow give all the different factors precisely equal weight.  Sometimes one factor will outweigh the others.  Sometimes one factor will stand out."  *Id*. at 672 (citation omitted).  Ultimately, the sentence must be reasonable.  *Id*.

---

[1]  This is calculated from a base offense level of 6, plus a 4-level increase for loss amount, minus a 2-level decrease for acceptance of responsibility.  *Id*. ¶¶ 22-29.

Title 18 U.S.C. § 3553(a)(2) sets forth the four aims of sentencing: the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. The sentence must be sufficient, but no greater than necessary, to comply with these goals of sentencing. *Id*. § 3553(a).

<u>Analysis</u>

Although the advisory guidelines range permits the Court to impose a sentence of probation, U.S.S.G. § 5C1.1(b), a custodial sentence is warranted in this case. A sentence merely to probation would not adequately reflect the offense and history and characteristics of the defendant, nor the aims of sentencing, particularly the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to deter criminal conduct, and to protect the public from the defendant. *See* 18 U.S.C. § 3553(a).

This theft conspiracy was not a crime of impulse, in which the criminal acts were out of character with the defendant's general behavior. This crime involved repeated, premeditated acts of stealing from facilities designed to support members of the military and their families. Day after day, the defendant, along with her two co-defendants, walked into AAFES stores where they placed items such as televisions and high-end kitchen appliances into their shopping carts and walked out without paying. Stipulation of Facts at 1-2. On at least one haul, the items stolen totaled in the thousands. *Id*. at 2. After the thefts, on at least 29 separate occasions, the defendant or her co-defendant went to the return desk of the same or a different AAFES store and returned the stolen merchandise for store credit, which were then used to buy prepaid debit cards which could be used anywhere (not just at AAFES stores). *Id*. The defendants caused AAFES to suffer a loss of at least $36,603.30. *Id*. at 3; *see also* Plea Agreement ¶ 10.

The defendant, moreover, was integral to the scheme.  Among the defendants, she was the only one who possessed an identification card necessary to gain entry onto the military bases where the AAFES stores were located, and thus, the thefts could not have been accomplished without her.  Similarly, the return transactions, which also require proper identification, could not have been accomplished without the identification cards provided by the defendant.  Stipulation of Facts at 2-3.

In addition to the brazen thefts underlying the instant offense, the defendant's criminal history shows repeated acts of theft and deceit, with a callous disregard for the victims from whom she stole.  Over the course of a year, from approximately March 2018 to April 2019, the defendant stole approximately $58,465 from six victims, including a blind woman, and another who was on the verge of homelessness with her eight-year-old daughter.  In all these prior cases, the victims trusted and relied on the defendant to assist with housing-related needs (*e.g.*, finding housing), which the defendant had represented she could do, and sent funds to the defendant for purposes misrepresented by the defendant.  Instead of assisting the victims, the defendant pocketed the funds, told the victims that the funds were in escrow or otherwise out of her hands, and even used aliases to pretend to be knowledgeable individuals, such as a housing employee, to continue to deceive the victims.

In one instance, the defendant stole over $40,000 from a blind woman who depended on others for assistance with financial transactions.  PSR ¶ 35.[2]  The victim had inherited money from her grandfather and wanted to use it to move herself, her children, and her brother into a safer home, away from persons involved in drug-related activity that shared their current residence.  *Id*. Between June 23, 2018 and August 29, 2018, the defendant obtained $40,200 from the victim

---

[2]  *See also* Proffer of Facts (Exhibit A) at 1-5.

ostensibly for a deposit, lease payments, and furnishings for a residence, but the defendant instead used the funds for personal purposes. *Id.* By the end of August 2018, the victim's inheritance was all but depleted, and no rental property was secured. *Id.*

In another case, occurring in approximately March to April 2019, the victim needed housing urgently for herself and her eight-year-old daughter and sent $1,780 to the defendant on the defendant's representation that the funds were for apartment rental expenses. PSR ¶ 36.[3] The defendant continued to take advantage of the victim's pressing situation and, the very next day, solicited an additional $620 from the victim, which the victim provided. *Id.* When the promised housing did not materialize, the victim asked the defendant to return the funds so that the victim could secure housing elsewhere and not have to live with her daughter in a homeless shelter. *Id.*; Exhibit A at 6. Instead of doing so, the defendant provided the victim with the name of a purported housing employee, who falsely reassured the victim via repeated text messages that a refund was forthcoming. *Id.* Subscriber records for the phone number that sent the text messages to the victim matched subscriber records of the defendant's two known telephone numbers, as well as the user name for the Cash App account where the defendant directed the victim to send the additional funds. *Id.* The defendant not only stole from the victim in the first place, but when informed of the specific and dire consequences to the victim, continued to perpetuate the scheme through further deceit.

These cases – which describe only two of the six victims from whom the defendant stole – exemplify the pattern of theft and deceit that the defendant conducted over the course of a year on her victims, some of whom were particularly vulnerable. Notably, this conduct was perpetuated as close in time as the month before the AAFES thefts, meaning that the defendant consistently

---

[3] *See also* Proffer of Facts (Exhibit A) at 5-7.

and frequently engaged in theft over a prolonged period of time.  None of these were isolated or one-off incidents.

The defendant also appears to have committed the crimes for purely personal gain – for example, the defendant does not have dependent children and her financial liabilities are very limited relative to the amounts stolen from the victims.  *See* PSR ¶¶ 53, 64.  In the AAFES thefts, the defendant (and her co-defendants) stole and/or returned non-essential items such as televisions, an artisan mixer, and high-end cosmetics.  Stipulation of Facts at 1.  Housing assistance records show that the defendant had minimal housing costs because the District of Columbia Housing Authority subsidized housing costs for her address in the District of Columbia.  *See* Exhibit E. Additionally, the amounts the defendant stole between March 2018 and July 2019 – approximately $58,465 in cash from victims and at least $36,603.30 in loss to AAFES – exemplifies the gratuitous nature of the thefts.

To be sure, the defendant appears to suffer from certain health problems, PSR ¶¶ 56-58, and her original sentences of 45 days' incarceration for the theft offenses were vacated in February 2022 due to the defendant's then-occurring medical issues.  Case Details (Exhibit B) at 5, 8 (reflecting initial sentence imposed in September 2020 of 12 months, with all but 30 days suspended, to run consecutive to the other theft sentences; modified in February 2022 to all time suspended); Case Details (Exhibit C) at 5, 8-9 (reflecting initial sentences imposed in September 2020 of 180 days, with all but 15 days suspended; modified in February 2022 to all time suspended); Case Details (Exhibit D) at 5, 7 (reflecting initial sentence imposed in September 2020 of 165 days, with all but 15 days suspended; modified in February 2022 to all time suspended). This means that the defendant has not faced any real consequences for her prior crimes, the facts of which are deeply troubling.  *See also* PSR at 22 (Recommendation of Probation).  Furthermore,

some of the documented medical conditions predated the theft offenses by several years, *compare* PSR ¶ 58 (2014, 2015, 2016) *with* Exhibit A at 2-4 (2018), 5 (2019), 7 (2018), 8 (2019), and the defendant was able to move freely about Washington, D.C. to meet with her victims and to obtain money from her victims.  In this case, which also occurred in 2019, the defendant had no difficulty traveling between Maryland, Virginia, and Washington, D.C. to commit the theft scheme in multiple AAFES stores, on at least 29 separate occasions.  *See* Stipulation of Facts at 2.

In addition to adequately reflecting the offense and history and characteristics of the defendant, a six month custodial sentence, followed by three years of supervised release, is sufficient but no greater than necessary to meet the aims of sentencing.  A sentence of imprisonment sentence would promote respect for the law, deter future criminal conduct, and protect the public from the defendant.  The defendant's current and prior criminal offenses demonstrate that she repeatedly flouted the law at the great expense of and to the detriment of others, perpetuated the AAFES thefts immediately after the other thefts, and Probation notes that her adjustment to pretrial supervision has been marginal as she has failed to follow reasonable instructions as requested by the supervising officer on multiple occasions.  *See* PSR ¶¶ 3, 57, 64. All of this counsels that more vigorous measures than the prior suspended sentences are needed in this case.  The defendant also is not currently under supervised release for the prior offenses, *see* Exhibit B at 8 (suspending sentence of three years' supervised release), and it is not clear how she supports herself.  PSR at 22.  A custodial sentence, which could be fashioned to consider any medical or vocational needs, followed by supervised release, is appropriate to deter the defendant from future criminal conduct and to protect the public.

**Conclusion**

For the reasons stated above, the Government submits that a custodial sentence of six months, followed by three years of supervised release, and an order of restitution in the amount of $36,603.30 is the appropriate sentence in this case.

Respectfully Submitted,

Erek L. Barron
United States Attorney

/s/
Coreen Mao
Special Assistant United States Attorney
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770
Phone: (301) 344-0112
Fax: (301) 344-4516
Coreen.Mao@usdoj.gov

Hollis Raphael Weisman
Assistant United States Attorney
6500 Cherrywood Land, Suite 200
Greenbelt, MD 20770
Phone: (301) 344-4029
Fax: (301) 344-4516
Hollis.Weisman@usdoj.gov